## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR MAJOR III** | **CIVIL ACTION** |
| **VERSUS** | **NO.  05-5972** |
| **TERRY TERRELL, WARDEN** | **SECTION "F"(2)** |
| **ALLEN CORRECTIONAL CENTER** | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Arthur Major III, is incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2]  Major and a co-defendant, Herbert Phillips, were charged by bill of information in Orleans Parish on June 3, 1999, with possession of crack cocaine in the amount of 28 grams or more, but less than 200 grams, or a mixture containing a detectable amount of crack cocaine or its analogues.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> This case arises out of a narcotics investigation headed by Detective Dennis Bush of the New Orleans Police Department.  That investigation culminated in the arrests of Mr. Major and Herbert Phillips on May 21, 1999.  On that date, the target of the investigation was Mr. Major; the targeted locations were two adjacent residences, 1423 Eagle Street and 8738 Jeannette Street. Although these two residences have different street addresses, they are physically located directly next door to each other on the corner of Eagle and Jeannette Streets.  Between the two residences is a yard in which junk vehicles are parked, including Mr. Major's secondary vehicle.
>
> [.  .  .]
>
> Concealing his presence about a block from the targeted locations, Detective Bush conducted additional surveillance for about forty minutes before executing the warrants. . . .  He then observed Mr. Major's black car drive up and park in front of the Eagle Street location and Mr. Major and his four-year old son exit the car and enter the Eagle Street location using a key.  Within five minutes, he saw Mr. Major exit the Eagle Street location, apparently leaving the child inside alone, and enter the Jeannette Street location using a key.  Within five minutes, he saw Mr. Major exit the Jeannette Street location and return to the Eagle Street location.  After observing Mr. Major's traverse between the two

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 6/3/99.

locations, Detective Bush decided to execute the search warrants and radioed his back-up team for assistance.

The detectives first executed the warrant on the Eagle Street location, which is where Mr. Major's residence was located. The entrance to the Eagle Street residence had both a wooden front door, which was ajar, and an iron front door, which was shut yet unlocked. From their vantage point, the detectives could see Mr. Major standing in the front room with his back to the front door. After knocking and announcing, the detectives entered and secured Mr. Major. Detective Bush described Mr. Major's reaction as very nervous and startled. Detective Bush then asked Mr. Major whether he had a key to the Jeannette Street location. Although Mr. Major denied having a key, Detective Bush recovered a set of keys from Mr. Major's pocket. One of those keys unlocked the front door of the Jeannette Street location. Mr. Major was detained in the Eagle Street location while Detective Bush, accompanied by Detectives Jeffery Keating and Paul Noel, relocated to the Jeannette Street location.

After knocking and announcing without getting any response, the detectives entered the Jeannette Street location using the key obtained from Mr. Major's pocket. The detectives described the condition of this residence as deplorable, full of junk, "real dusty," and uninhabited. Upon entering this rather large residence, the detectives split up with one going left, one going right, and one going to the rear. Detective Keating testified that he went to the right and that he found in the front room in plain view, tucked in a corner, a large, clear plastic bag containing a white substance (which tested positive for cocaine), some plastic sandwich bags, a scale, a police scanner, a radio, an open box of baking soda, and a razor blade. The white substance was described as being wet and mushy. Both the scale and razor blade were covered with a white powdery substance (which also tested positive for cocaine).

In making a safety sweep of the rear of the residence, Detective Noel testified that he found Mr. Phillips crouched down hiding behind a mattress that was leaning up against the wall. Detective Noel further testified that when he patted Mr. Phillips down he found no keys, weapons, contraband, or currency.

After completing the search of Jeannette Street location, Detective Bush returned to the Eagle Street location. A drug detection dog alerted the detectives to a stereo speaker inside of which they found one hundred and sixty-four dollars in various denominations. Near the speaker they found some small coin envelopes. They also found two Entergy bills for the Eagle Street address for the months of April and May 1999 in Mr. Major's name. The only other evidence they confiscated at the Eagle Street location was the set of keys, noted above, and seventy-two dollars that was found in Mr. Major's pockets.

3

Both Mr. Major and Mr. Phillips were arrested and charged with the same offense. At trial, Mr. Phillips testified for the prosecution. Mr. Phillips told the jury that in exchange for his testimony, the State reduced the charge against him to simple possession of cocaine. He also acknowledged that this was his second drug-related conviction. He further testified that he lived a block away from Mr. Major and that the reason he went to Mr. Major's house on the day they were arrested was to "score" crack cocaine. According to Mr. Phillips, when he arrived that day, Mr. Major was not home. One of Mr. Major's neighbors, however, asked him to wash their car. Before he finished with the neighbor's car, Mr. Major arrived and told him that the cocaine was not ready for distribution because it had not yet dried. Mr. Phillips testified that he also observed Mr. Major move the cocaine from the Eagle Street to the Jeannette Street location and that when the detectives arrived he was still waiting for the cocaine to dry.

(footnotes omitted). <u>State v. Major</u>, 829 So.2d 625, 628-30 (La. App. 4th Cir. 2002); State Record Volume 1 of 2, Louisiana Fourth Circuit Opinion, 2002-KA-0133, pp.1-5, October 2, 2002.

The State amended the bill of information on January 19, 2000, to charge Phillips with simple possession, to which he entered a plea of guilty that same day.[4] The court sentenced him on January 31, 2000, to six months in the custody of the Louisiana Department of Corrections.[5]

---

[4]<u>Id.</u>, amendment dated 1/19/00; St. Rec. Vol. 1 of 2, Waiver of Constitutional Rights Plea of Guilty Form, 1/19/00.

[5]St. Rec. Vol. 1 of 2, Sentencing Minutes (Phillips), 1/31/00.

Major was tried by a jury on January 19 and 20, 2000, and found guilty as charged.[6] The state trial court subsequently denied Major's motions for new trial and for post-verdict judgment of acquittal on March 27, 2000.[7] The court sentenced him to serve 15 years in prison without benefit of parole, probation or suspension of sentence.[8]

On appeal to the Louisiana Fourth Circuit, Major raised one claim pro se, alleging that the evidence was insufficient to support the verdict.[9] His counsel also raised one claim challenging the denial of the defense motion for mistrial based on the alleged improper admission of other crimes evidence.

In the meantime, on April 24, 2000, Major filed a writ application with the Louisiana Fourth Circuit seeking review of his claims of alleged ineffective assistance of counsel.[10] The court denied the application and instructed Major to pursue his claims in his pending appeal pursuant to La. Code Crim. P. art. 924.[11]

---

[6]St. Rec. Vol. 1 of 2, Trial Minutes (4 pages), 1/19/00; St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, 1/19-20/00.

[7]St. Rec. Vol. 1 of 2, Sentencing Minutes, 3/27/00; Motion for New Trial, 3/28/00; Motion for Post Verdict Judgment of Acquittal, 3/28/00.

[8]St. Rec. Vol. 1 of 2, Sentencing Minutes, 3/27/00.

[9]State v. Major, 829 So.2d at 625; St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 2002-KA-0133, 10/2/02.

[10]St. Rec. Vol. 1 of 2, 4th Cir. Writ Application, 2000-K-0936, 4/24/00.

[11]St. Rec. Vol. 1 of 2, 4th Cir. Order, 2000-K-0936, 5/23/00.

On October 2, 2002, the appellate court affirmed the conviction, finding that the evidence was sufficient to support the verdict.  The court also found that the challenge to the other crimes evidence had been waived since no objection was made at trial. Alternatively, the court found the claim to be without merit.[12]

Major thereafter filed a timely writ application pro se in the Louisiana Supreme Court on January 27, 2003, seeking review of the two claims raised on appeal.[13]  The court denied the application without reasons on February 20, 2004.[14]  Major's conviction became final 90 days later, on May 20, 2004, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[12]The court also determined that the trial court failed to impose a mandatory fine, but chose not to remand for correction of the error.

[13]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 03-KH-0267, 1/27/03 (postmarked 10/30/02, signed 10/29/02); St. Rec. Vol. 1 of 2, La. S. Ct. Letter, 2003-KH-267, 1/27/03.  The application was signed and postmarked in a timely fashion, within the 30 days allowed under La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

[14]State ex rel. Major v. State, 866 So.2d 825 (La. 2004); St. Rec. Vol. 1 of 2, La. S. Ct. Order, 2003-KH-0267, 2/20/04.

Major also filed an application for post-conviction relief in the state trial court on May 4, 2004.[15]  He raised two grounds for relief: (1) prosecutorial misconduct through the use of perjured testimony from Herbert Phillips, and (2) insufficient evidence to support the verdict for possession of cocaine in the amount of more than 28 grams.  The record does not contain a ruling from the state trial court on this application.

On August 31, 2004, Major filed an application for a writ of mandamus with the Louisiana Fourth Circuit seeking an order directing the trial court to rule on his post-conviction claims.[16]  The appellate court denied the application on October 1, 2004, after reviewing the claims and finding that Major was not entitled to relief.[17]

Major also filed a timely writ application with the Louisiana Supreme Court on December 14, 2004, seeking review of the same post-conviction claims.[18]  The Louisiana Supreme Court denied the application without reasons on August 19, 2005.[19]

---

[15]St. Rec. Vol. 1 of 2, Application for Post Conviction Relief, 5/4/04.

[16]St. Rec. Vol. 2 of 2, 4th Cir. Writ Application, 2004-K-1561, 8/31/04.

[17]St. Rec. Vol. 1 of 2, 4th Cir. Order, 2004-K-1561, 10/1/04.

[18]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 04-KH-3055, 12/14/04; St. Rec. Vol. 1 of 2, La. S. Ct. Letter, 12/14/04 (showing postmark 10/26/04).  The application was signed and postmarked in a timely fashion, within the 30 days allowed under La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

[19] State ex rel. Major v. State, 908 So.2d 654 (La. 2005); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2004-KH-3055, 8/19/05.

II.   FEDERAL HABEAS PETITION

On December 1, 2005, Major filed a petition for federal habeas corpus relief in this court seeking relief on the following grounds:[20] (1) prosecutorial misconduct through the use of perjured testimony from Herbert Phillips, and (2) insufficient evidence to support the verdict for possession of cocaine in the amount 28 grams.  The State filed a response in opposition to the petition alleging that Major's claims are without merit.[21]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[20]Rec. Doc. No. 1, Petition.  Major later "supplemented" his petition by submitting copies of transcripts which he claims support his prosecutorial misconduct claim.  Rec. Doc. No. 27.

[21]Rec. Doc. No. 22.

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Major's petition, which, for reasons discussed below, is deemed filed in this federal court on October 19, 2005.[23]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Major has exhausted available state court remedies and his petition is timely.  However, his claims are without merit and his petition must be denied for the following reasons.

IV.   STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Major's petition was filed by the clerk of court on December 1, 2005.  Major dated his signature on the petition on October 19, 2005. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the

> writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25).

VI.   PROSECUTORIAL MISCONDUCT (CLAIM NO. ONE)

Major alleges that the prosecution allowed or encouraged Phillips to testify falsely in return for his plea agreement.  Specifically, Major alleges that Officer Paul Noel testified that he entered the Jeannette Street house and found Phillips hiding behind a mattress.  Major claims, however, that Phillips later testified that he sat on a sofa in the house for 45 minutes waiting for the drugs to dry.  Major argues that the testimony of

Officer Noel and Phillips contradict each other and therefore constitute perjury.   In addition, Major also complains that Phillips was not found with any currency, although he testified that he was there to "score" cocaine from Major.  Finally, Major suggests that Phillips lied when he testified that he did not receive anything for his testimony, when in fact he testified pursuant to a plea agreement with the prosecution.  For these reasons, Major argues that the prosecution allowed the false testimony in violation of due process and his right to a fair trial.

Claims of prosecutorial misconduct about which trial counsel did not object during trial must be evaluated under plain error analysis to determine if the alleged violations "seriously affected the fairness, integrity, or public reputation of judicial proceeding and resulted in a miscarriage of justice."  United States v. Goff, 847 F.2d 149, 162 (5th Cir. 1988), cert. denied, 488 U.S. 932 (1988) (citing United States v. Livingston, 816 F.2d 184, 195 (5th Cir. 1987)).  A review of the trial transcript shows that neither Major nor his counsel challenged the admissibility of Phillips's testimony as perjury or complained at trial that the prosecution was offering perjured testimony.

The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the defendant must show that (1) the

12

testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. Appx. 741, 744, 2003 WL 21545926 at*3 (5th Cir. July 3, 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  Duncan, 70 Fed. Appx. at 744, 2003 WL 21545926 at*3 (citing Nobles, 127 F.3d at 415).

Major has offered nothing to support his assertion that any of the statements by Phillips or Officer Noel were false or that the State knew of any falsity. Most significantly, Major has also failed to establish that, even if Phillips and Noel testified differently, the testimony tainted the jury's decision.

The trial transcript shows that Phillips went to Major's house to buy crack cocaine and Major was not home.[24]  Phillips worked on a neighbor's car until Major returned home.  He told Major that he wanted get one rock of crack cocaine.  Major left him working on the car and returned later to tell Phillips that the cocaine was not yet dried into crack.  Phillips testified that Major moved the wet cocaine from his house to the Jeannette Street house and then left in his car.[25]  Phillips eventually made his way into the Jeannette Street house where he sat waiting for Major and for the cocaine to dry.

---

[24]St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, p. 67, 1/19-20/00.

[25]Id., at p. 68.

Contrary to Major's suggestion, Phillips told the jury that he agreed to testify in exchange for his plea of guilty to the charge of simple possession. He also clarified for the prosecution that he was not actually hiding behind the mattress when the officer found him. He claimed that he was sitting in an area that was blocked by the mattresses, which were leaning against the wall.[26] This apparently led the officer to believe that he was hiding. Phillips further stated that he had no reason to hide because he had nothing on him.[27]

Officer Noel testified at trial that he did a safety sweep of the Jeannette Street house.[28] He and another officer knocked on the front door and received no answer.[29] While checking the rear basement area, he located Phillips behind a mattress. The officer later agreed with defense counsel that Phillips was hiding.[30] He found no drugs or money during his pat down search of Phillips.[31]

---

[26] Id., at p. 71.

[27] Id., at p. 71.

[28] Id., at p. 113.

[29] Id., at p. 114.

[30] Id.

[31] Id., at p. 113, 114.

The jury therefore heard the testimony of both men and any differences in it.  Both Phillips and Noel testified that Phillips was sitting in the back room, or basement-like area, when he was found by Officer Noel.  Phillips acknowledged that he was sitting behind the mattress when Noel came down the steps into the room.  There is no true conflict in their testimony.

The jury heard Phillips testify that he accepted or entered a plea of guilty to simple possession in return for his agreement to testify at trial.  The jury also heard the testimony by Officer Noel that Phillips had no money, keys or anything on him when he was retrieved from the back room of the Jeanette Street house.  Thus, the jury was aware that Phillips had no money on him with which to buy the crack and still returned a guilty verdict.

The jury obviously resolved any discrepancies between the statements and the trial testimony in favor of the prosecution and a guilty verdict.  The guilty verdict itself is indicative of the credibility determinations made by the jury, determinations which the jury was fully empowered to make, and those factual determinations are entitled to deference on federal habeas corpus review.

For these reasons, Major has failed to establish any misconduct on the part of the prosecution or that any perjured testimony was presented to the jury.  The state courts'

15

denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

VII.   INSUFFICIENT EVIDENCE (CLAIM NO. TWO)

Major alleges that the prosecution's scientific evidence failed to establish that he was in possession of more than 28 grams of crack cocaine.  Major suggests that, because Officer Harry O'Neal could not distinguish which particles he tested, there was no proof that the whole batch of drugs contained cocaine.

The well established federal standard set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979), applies to sufficiency of the evidence determinations.  Such claims present a mixed question of law and fact.  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Jackson requires this court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).

Major was charged with violation of La. Rev. Stat. §40:967(F)(1)(a), which provides:

F. Other penalties for possession.
(1) Except as otherwise authorized in this Part:

16

> (a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.

Thus, in order to establish this type of possession, the State must prove that the defendant knowingly and intentionally possessed 28 grams or more, but less than 200 grams, of cocaine or a mixture or substance containing a detectable amount of cocaine or its analogues.  State v. Garnier, 660 So.2d 928, 932-33 (La. App. Ct. 4th Cir. 1995). In this petition, Major does not challenge the possession aspect of the charge, which was resolved against him by the state courts on direct appeal.  Major's challenge before this Court is instead the alleged failure by the State to prove exactly what part of the 73.2 grams of material was actually cocaine.

Contrary to Major's suggestion, there is no express requirement in the statute that the product be pure cocaine.  The statute instead requires that at least 28 grams of what was recovered contain cocaine, a mixture of cocaine, or cocaine-like substance.

The evidence at trial established that the officers, among other things, located a large amount of what they believed to be cocaine in the basement area of the Jeannette Street house, along with sandwich bags and baking soda, both known to be used in the

cooking of cocaine into crack.[32]  They also found two pieces of foil containing what they

believed to be heroin.[33]  This assumption was based on the foil packaging normally used

for heroin.[34]

Officer Harry O'Neal was called as an expert in testing and analysis of controlled

dangerous substances.[35]  Officer O'Neal weighed the off-white material retrieved by the

other officers.[36]  He determined that it was 73.2 grams.  He tested a portion of that

material by two means, which both conclusively determined that the material was

cocaine.[37]  He testified that he took 28 to 30 grams worth of crystals out of the bag  and

tested that portion.[38]  He marked the pieces that he tested; however, over time, the dye

absorbed into the loose cocaine and the pieces could no longer be distinguished at the

time of trial.[39]  He also found cocaine residue on other items, including the scale and

---

[32]St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, pp. 22-25, 44, 1/19-20/00.

[33]Id., at pp. 26, 48, 54.

[34]Id., at pp. 38-39.

[35]Id., at pp. 96-97.

[36]Id., at pp. 98, 100.

[37]Id., at pp. 99, 100.

[38]Id., at p. 101.

[39]Id., at p. 102.

18

razor blade, seized from the house.[40]   He determined that the foil packets seized contained no controlled substance at all.[41]

Major's counsel cross-examined the officer in an effort to show that, because he did not test all of the material in the bag, he could not be sure that all of the substance was in fact cocaine.[42]   In spite of defense counsel's efforts, the jury heard ample testimony that at least 28 to 30 grams of what was seized was cocaine.  There was no evidence or testimony to contradict this conclusion.  The State therefore met the burden required to prove that Major was in possession of more than 28 grams of cocaine.  The jury apparently, and reasonably, agreed, evidenced by its verdict.

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Major is not entitled to relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Arthur Major III for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[40]Id., at pp. 99, 100.

[41]Id., at pp. 103.

[42]Id., at pp. 104-107.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___28th___ day of November, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE